J-A24033-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| EDGAR AND MARIA GANTALAO, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| GERALD ROYER | : | No. 129 WDA 2017 |

Appeal from the Order December 16, 2016
in the Court of Common Pleas of Clearfield County,
Civil Division, No(s):  2011-2124 CD

BEFORE:  MOULTON, SOLANO and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:               FILED DECEMBER 22, 2017

Edgar and Maria Gantalao (collectively "the Gantalaos") appeal from the Order denying their Motion for Post-Trial Relief, following a non-jury verdict against them and in favor of Gerald Royer ("Royer").[1]  We affirm.

The trial court set forth the relevant underlying factual history as follows:

> [The Gantalaos] moved into their home in the Treasure Lake Development in Sandy Township, Clearfield County, in 2002. Prior to March 1, 2011, the [Gantalaos] lived in their home without any problems or incidents.  In September of 2009, [Royer] purchased the property adjacent to the [Gantalaos']

---

[1] The trial court's docket reflects that on February 7, 2017, Judgment was entered against the Gantalaos and in favor of Royer.  Because the trial court's December 16, 2016 Order denying the Gantalaos' Motion for Post-Trial Relief was later reduced to judgment, and was the court's final pronouncement on the matter, it is properly appealable.  See Johnston the Florist, Inc. v. TEDCO Constr. Corp., 657 A.2d 511, 513 (Pa. Super. 1995) (en banc) (holding that, although the appeal was taken from an order denying post-trial relief, "jurisdiction in appellate courts may be perfected after an appeal notice has been filed upon the docketing of a final judgment.").

property. [Royer] subsequently built a spec[ulative] house on the property with the intention of reselling the improved property at a profit. During the construction of the spec house, [Royer] and/or [Royer's] independent contractors intentionally and impermissibly intruded upon the [Gantalaos'] property and damaged the [Gantalaos'] drainage system by digging up the drainage pipe connected to the [Gantalaos'] house, intentionally cutting out an eight (8) foot section of pipe, and backfilling the hole. Upon backfilling the hole on top of the severed pipe, the severed pipe collapsed shut; thus, eliminating the possibility of draining water away from the [Gantalaos'] residence.

The apparent objective for [Royer] and/or [Royer's] independent contractors ... to cut and remove a section of the [Gantalaos'] drainage pipe was to facilitate the installation of the drainage pipes to be connected to the new spec house, which were at the same level in the ground at the [Gantalaos'] drainage pipe. The removal of the section of the [Gantalaos'] drainage pipe, however, resulted in the lower level of the [Gantalaos'] home flooding. The ground water, with no way to properly drain, backed up inside the severed and blocked drainage pipe and spilled into the [Gantalaos'] finished basement. In some instances, the water that had collected in the [Gantalaos'] basement was ankle deep.

The flooding in the [Gantalaos'] basement ultimately caused extensive damage. The water had damaged all of the basement carpeting, as well as some of the furniture and other personal items that had been stored in the lower level of the [Gantalaos'] home. The flooding created a situation which required the [Gantalaos] to expend a significant amount of time and money on addressing and correcting the problem. The [Gantalaos] lived in their home while the basement was flooded for a period of approximately three (3) days before they were able to determine the source of the problem or a temporary fix. However, it was another three (3) months before the issue was entirely rectified.

Trial Court Opinion, 11/17/16, at 1-3.

On December 20, 2011, the Gantalaos filed a Complaint against Royer, alleging claims of trespass and negligence. Royer filed an Answer. The case proceeded to a non-jury trial on October 18, 2016. Thereafter, the trial

court entered a verdict in favor of Royer. The Gantalaos filed a Motion for Post-Trial Relief, which the trial court denied. The Gantalaos filed a Notice of Appeal. Subsequently, Judgment was entered in favor of Royer and against the Gantalaos.

On appeal, the Gantalaos raise the following questions for our review:

I.   Whether the [trial] court erred as a matter of law when it determined that [Royer] was not liable under a theory of intentional trespass to land committed by his independent contractor based upon a finding that [Royer] did not know of[] or direct the trespass, when the law of the Commonwealth related to trespass to land would expressly impose liability upon a trespassing defendant and/or his independent contractor whether or not the trespasser had actual knowledge that he was committing a trespass[?]

II.  Whether the [trial] court erred as a matter of law when it determined that [Royer] was not liable under a theory of intentional trespass to land committed by his independent contractor based upon a finding that [Royer] did not know of or direct the trespass, when the independent contractor was acting for the commercial benefit of [Royer], [Royer] took the full benefit of the work done by his independent contractor while committing the trespass, and the evidence would indicate that the independent contractor knew, or should have known[,] that he was trespassing at the time he exposed and severed the [Gantalaos'] drainage pipe[?]

Brief for Appellants at 5 (some capitalization omitted).

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised

on an error of law. However, where the issue concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

Stephan v. Waldron Elec. Heating and Cooling LLC, 100 A.3d 660, 664–65 (Pa. Super. 2014) (citation, brackets and ellipses omitted).

We will address the Gantalaos' claims together.[2] The Gantalaos contend that the trial court erred as a matter of law in finding that Royer was not liable for trespass. Brief for Appellants at 14, 19. The Gantalaos argue that the fact that Royer did not know of, or direct the trespass is irrelevant, as liability for trespass does not rely upon Royer's actual knowledge of the trespass. Id. at 14, 16-17, 18. The Gantalaos claim that in the absence of any evidence, the trial court should have inferred that Royer is answerable for the persons who committed the trespass. Id. at 18; see also id. at 17-18 (asserting that the reasonable facts demonstrate that Royer approved of the construction and accepted the benefit of selling the property and, thus, is liable for trespassing), 19 (arguing that the trial court

---

[2] As part of their second claim on appeal, see Brief for Appellants at 19, the Gantalaos incorporate by reference the argument they set forth in their first claim. It is well-settled that "[w]hen an appellant attempts to incorporate by reference issues addressed elsewhere and fails to argue them in his brief, the issues are waived." Moses Taylor Hosp. v. White, 799 A.2d 802, 804 (Pa. Super. 2002); see also Pa.R.A.P. 2119(a). While the Gantalaos fail to conform to the Pennsylvania Rules of Appellate Procedure, we will address the Gantalaos' second claim in conjunction with their first claim.

erred as a matter of law in failing to find that Royer trespassed on the Gantalaos' property where the independent contractor "was acting for the commercial benefit of [Royer], [Royer] took the full benefit of the work done by his independent contractor ..., and ... the independent contractor knew, or should have known[,] that he was trespassing at the time he exposed and severed the [Gantalaos'] drainage pipe." (capitalization omitted)).  The Gantalaos also assert that Royer failed to plead or establish that he had a relationship with an independent contractor such that Royer had no knowledge of the trespass and therefore could avoid liability.  Id. at 14-15, 18.

> Under Pennsylvania law,
>
> One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally
>
> (a) enters land in the possession of the other, or causes a thing or a third person to do so, or
> (b) remains on the land, or
> (c) fails to remove from the land a thing which he is under a duty to remove.
>
> Restatement (Second) of Torts § 158 (1965) ...  "The word 'intent' is used throughout the Restatement [(Second) of Torts] to denote that the actor desires to cause [the] consequences of his act, or that he believes that the consequences are substantially certain to result from it."  Restatement (Second) of Torts § 8A ....
>
> In the context of a trespass, "intent" refers to intent to be on the land.  Kopka [v. Bell Tel. Co. of Pa.], 91 A.2d [232,] 235 [(Pa. 1952)].

It is, therefore, immaterial whether or not [the actor] honestly and reasonably believes that the land is his own, or that he has the consent of the possessor or of a third person having power to give consent on his behalf, or that he has a mistaken belief that he has some other privilege to enter.

Id. (quoting Restatement (First) of Torts § 158 cmt. i). Stated another way, a person is a trespasser merely by intending to be where he is. The intent to be on another's land is not required to prove trespass. ...

Additionally, one who intentionally causes a third person to enter another's land is liable for trespass:

If, by any act of his, the actor intentionally causes a third person to enter land, he is as fully liable as though he himself enters. Thus, if the actor has commanded or requested a third person to enter land in the possession of another, the actor is responsible for the third person's entry if it be a trespass. This is an application of the general principle that one who intentionally causes another to do an act is under the same liability as though he himself does the act in question. So too, one who by physical duress causes a third person to go upon the land of another or who carries the third person there against his will is liable as a trespasser, although the third person may not be liable.

Restatement (Second) of Torts § 158 cmt. j. A person who "authorizes or directs" another to trespass "is himself liable as a trespasser to the same extent as if the trespass were committed directly by himself." Kopka, 91 A.2d at 235. "[T]his is true even though the authority or direction be given to one who is an independent contractor." Id.

Liberty Place Retail Assocs., L.P. v. Israelite Sch. of Universal Practical Knowledge, 102 A.3d 501, 506–07 (Pa. Super. 2014) (footnote, emphasis, and citation omitted).

The trial court addressed the Gantalaos' claims as follows:

In the case at bar, [Royer] was the titled owner of the property adjacent to [the Gantalaos'] property. [Royer] employed his

contractor(s) to construct the drainage system for [Royer's] spec house and directed them to install it. However, while it is established that either [Royer] or his contractor(s) at some point trespassed onto the [Gantalaos'] property while installing the drainage system, no evidence has shown that [Royer] actually committed the trespass, or authorized or directed any such trespass. Instead, all that can be ascertained from the record is that there was in fact a trespass onto [the Gantalaos'] property, and extensive damage was caused when the [Gantalaos'] drainage pipe was removed. The record remains unclear as to who impermissibly intruded upon [the Gantalaos'] property, or if it was ever at [Royer's] direction. Therefore, [the trial c]ourt cannot hold [Royer] liable for trespass.

Trial Court Opinion, 11/17/16, at 4.

We are constrained to agree and note that, at the non-jury trial, the only testimony presented was that of the Gantalaos and Fred Boyce, the owner-operator of Roto-Rooter, who repaired the Gantalaos' drainage pipe. The Gantalaos did not present any testimony from Royer or the independent contractor who performed the work. At trial, the Gantalaos' attorney indicated that Royer had given a deposition on September 14, 2015, and wanted to read into the record the portion where Royer admitted "that he had constructed this home on that particular site." N.T., 10/18/16, at 53. Royer's counsel stipulated to the fact that Royer owned the property and constructed the home on the site. Id. The deposition was not entered into the record, and neither party describes the contents of the deposition. See Love-Diggs v. Tirath, 911 A.2d 539, 541 (Pa. Super. 2006) (stating that "[i]t is an appellant's duty to insure that the certified record contains all documents necessary for appellate review.") (citation omitted).

Furthermore, the Gantalaos' reliance upon 75 Am.Jur.2d Trespass § 55,[3] see Brief for Appellants at 17, is misplaced in light of the lack of evidence in this case. As noted above, the Gantalaos presented no evidence that Royer directed, authorized, commanded, encouraged, or cooperated in the trespass. The fact that Royer owned the spec home and ostensibly benefited from the trespass does not demonstrate that he knew about, approved, or accepted the trespass where the Gantalaos introduced no evidence regarding this assertion. Further, without any evidence demonstrating Royer directed, authorized, or accepted the trespass, we cannot infer Royer's liability. Additionally, there is no evidence that Royer controlled the manner in which the independent contractor constructed the drainage system. See Beil v. Telesis Const., Inc., 11 A.3d 456, 466 (Pa. 2011) (noting that "[o]ne who entrusts work to an independent

---

[3] Section 55 states the following, in relevant part:

> A person may be liable for causing someone else to commit a trespass. All persons who command, instigate, promote, encourage, advise, countenance, cooperate in, aid, or abet the commission of a trespass, or who approve of it after it is done, if done for their benefit, are co-trespassers with the person committing the trespass, and are liable as principals to the same extent and in the same manner as if they had performed the wrongful act themselves. Thus, although entry is a requisite of a trespass, one is also liable for causing a third person to do so, and a trespasser who did not personally and physically invade still may be liable for having caused or directed another person to trespass.

75 Am.Jur.2d Trespass § 55.

contractor, but who retains the control of any part of the work, is subject to liability ..."); see also id. at 467 (noting that where "the evidence fails to establish the requisite retained control, the determination of liability may be made as a matter of law.").   Thus, we are constrained to conclude that the trial court properly denied the Gantalaos' Motion for Post-Trial Relief.[4]

Order affirmed.


Judgment Entered.

_Joseph D. Seletyn_ (signature)

Joseph D. Seletyn, Esq.
Prothonotary


Date:  12/22/2017

---

[4] The Gantalaos do not raise an argument related to their negligence claim in their appellate brief.